**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **ENTROPIC COMMUNICATIONS, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:23-cv-00050-JRG |
| **v.** | ) | Case No. 2:23-cv-00051-JRG |
| | ) | |
| **CHARTER COMMUNICATIONS, INC.,** | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S MOTION TO**
**DECONSOLIDATE THIS ACTION FROM NO. 2:23-CV-00052-JRG,**
**THEN CONSOLIDATE THIS ACTION WITH NO. 2:23-CV-00050-JRG.**

1

# TABLE OF CONTENTS

Page(s)

**Table of Authorities**........................................................................................................ii

**INTRODUCTION**........................................................................................................1

**BACKGROUND** ...........................................................................................................3

    A.   The '50 and '51 MoCA Cases .................................................................. 3

    B.   The '52 Cable Case ................................................................................ 4

    C.   The Related California Cases.................................................................. 4

    D.   Entropic's Actions Post Filing and Where the Cases Now Stand ................................. 5

    E.   Charter's Attempts to Meet and Confer, and Entropic's Admissions ......................... 6

**LEGAL STANDARD**....................................................................................................7

**ARGUMENT** ...............................................................................................................7

**I.**     Consolidation of the Related '50 and '51 MoCA Cases is Warranted. ............................... 8

    A.   Factor 1 and 2 heavily favor consolidation of the '50 and '51 cases............................ 8

    B.   Factor 3: There are common questions of law and fact supporting consolidation of the '50 and '51 cases............................................................................................ 8

    C.   Factor 4: Consolidation of the '50 and '51 cases would not prejudice Entropic.......... 10

    D.   Factor 5: Consolidation of the '50 and '51 cases promotes judicial economy. ............ 11

**II.**   Deconsolidation of the '51 and '52 Cases is Warranted. ................................. 13

    A.   The same factors do not support consolidation of the '51 and '52 cases. ................... 13

    B.   Entropic's position on deconsolidation is without merit............................................. 14

**CONCLUSION** .........................................................................................................**15**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Blackberry Ltd.*,
  2014 WL 12551206 (W.D. Tex. Apr. 4, 2014)...................................................................9

*BlitzSafe Tex., LLC v. Honda Motor Co.*,
  2016 WL 4762083 (E.D. Tex. Sept. 13, 2016) ...............................................................12

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
  2:22-cv-00125-JRG (E.D. Tex.) ............................................................................. *passim*

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
  2:23-cv-00050-JRG (E.D. Tex) ............................................................................. *passim*

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
  2:23-cv-00051-JRG (E.D. Tex.) ............................................................................ *passim*

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
  2:23-cv-00052-JRG (E.D. Tex.) ............................................................................ *passim*

*Entropic Commc'ns, LLC v. Comcast Corp.*,
  2:23-cv-01048 (C.D. Cal.) ...............................................................................4, 14

*Entropic Commc'ns, LLC v. Comcast Corp.*,
  2:23-cv-01050 (C.D. Cal.) ...............................................................................5, 14

*Entropic Commc'ns, LLC v. Cox Commc'ns, Inc.*,
  2:23-cv-01047 (C.D. Cal.) ...............................................................................4, 14

*Entropic Commc'ns, LLC v. Cox Commc'ns, Inc.*,
  2:23-cv-01049 (C.D. Cal.) ...............................................................................5, 14

*Entropic Commc'ns, LLC v. Dish Network Corp.*,
  2:23-cv-01043 (C.D. Cal.) ....................................................................................5

*Gentry v. Smith*,
  487 F.2d 571 (5th Cir. 1973) ...................................................................................7

*Hillman Grp., Inc. v. Keyme, LLC*,
  2020 WL 6938441 (E.D. Tex. Oct. 23, 2020) ...............................................................7, 10

*Holmes v. City of San Antonio Airport*,
  No. 5:21-cv-00267-OLG, 2021 WL 2878548 (W.D. Tex. Apr. 26, 2021)..............................7

ii

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
   797 F.3d 1025 (Fed. Cir. 2015).............................................................................12

*Lester v. Exxon Mobil Corp.*,
   879 F.3d 582 (5th Cir. 2018) .........................................................................7, 11

*Lo v. Microsoft Corp.*,
   2008 WL 11445459 (E.D. Tex. Mar. 25, 2008) ................................................9

*Ohio Willow Wood Co. v. Alps South, LLC*,
   735 F.3d 1333 (Fed. Cir. 2013)..........................................................................12

*Sage Prods., Inc. v. Devon Indus., Inc.*,
   148 F.R.D. 213 (N.D. Ill. 1993).................................................................9, 10, 11

*Wi-Lan Inc. v. Alcatel-Lucent USA Inc.*,
   2013 U.S. Dist. LEXIS 199118 (E.D. Tex. Mar. 18, 2013)..............................9

**Other Authorities**

Fed. R. Civ. P. 12(b)(3)........................................................................................5

Fed. R. Civ. P. 42...............................................................................................15

Fed. R. Civ. P. 42(a)......................................................................................7, 11

Fed. R. Civ. P. 42(a)(2)........................................................................................7

L.R. 3-1.................................................................................................................8

L.R. 3-2.................................................................................................................8

L.R. 3-3.................................................................................................................7

L.R. 3-4.................................................................................................................7

iii

**INTRODUCTION**

On February 10, 2023, Plaintiff Entropic Communications, LLC ("Entropic") filed three patent infringement lawsuits in this Court against Defendant Charter Communications, Inc. ("Charter").  This follows another complaint that Entropic filed less than a year prior, on April 27, 2022.  Two of the complaints filed on February 10 allege infringement by Charter's set-top boxes that implement the Multimedia over Coax Alliance standards ("MoCA standards").[1]  The other two cases concern a separate set of patents and accuse cable television and internet services and the DOCSIS standard, completely unrelated to the MoCA standard.[2]  For the reasons set forth herein and in Charter's prior motion, the facts strongly support consolidating the MoCA cases, and separately consolidating the Cable Cases.[3]

With respect to the MoCA cases, these cases will involve the same technology (the MoCA standard), the same accused products (set-top boxes), the same accused service (Legacy Time Warner Cable's whole-home DVR service), and the same discovery and witnesses.  Indeed, Entropic has already acknowledged the overwhelming relatedness of these cases by voluntarily consolidating all of the MoCA patents into single complaints in the Central District of California for each of the other cable and satellite providers.  Here, on the other hand, Entropic split its allegations against the same Charter's MoCA set-top boxes and the same whole-home DVR service into two cases.  Then, despite promptly serving the '50 complaint, Entropic intentionally

---

[1] *See Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, 2:23-cv-00050-JRG (E.D. Tex) (the "'50 case"); *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, 2:23-cv-00051-JRG (E.D. Tex.) (the "'51 case") (collectively, the "MoCA cases").

[2] *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, 2:22-cv-00125-JRG (E.D. Tex.) ('125 case) and *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, 2:23-cv-00052-JRG (E.D. Tex.) (the "'52 case") (collectively, the "Cable cases").

[3] Mot. to Consolidate, May 11, 2023, '125 Dkt. 99.

withheld service of the related '51 complaint for months, only to complete service the morning of the '50 case's case management conference.  Entropic's admitted reason for withholding service was to place the two highly-related cases on different schedules to prevent consolidation.  What Entropic has not done during the meet and confer process is provide any justification for keeping these two related cases separate.

With respect to the Court's recent consolidation of one of the MoCA Cases ('51) with one of the unrelated Cable Cases ('52)—the two cases for which Entropic withheld timely service— these cases should be deconsolidated because they involve completely different technologies and different accused products and services.  Entropic's positions with respect to consolidation/deconsolidation are, at best, inconsistent.  Entropic previously opposed consolidation of the Cable Cases ('125 and '52 cases) despite also having filed all of the patents in single complaints in the Central District of California, and now opposes consolidation of the related MoCA cases ('50 and '51 cases).  Remarkably, however, Entropic now opposes deconsolidation of the unrelated '51 and '52 cases while acknowledging that they accuse completely different technologies and services, and would involve different witnesses and third-parties.  Entropic's position that unrelated cases should remain consolidated *while cases that are actually related should not be consolidated*, will prejudice Charter's defense, artificially drive up the cost of defense, and be an inefficient use of this Court's resources.

For the reasons herein, Charter respectfully requests that this Court exercise its discretion to (a) consolidate the MoCA Cases for all pretrial matters and (b) deconsolidate the '51 case (MoCA) and '52 case (Cable).  Neither action would prejudice Entropic, and both are in the interest of judicial economy.

## BACKGROUND

### A.      The '50 and '51 MoCA Cases

In the MoCA cases, Entropic alleges "Charter utilizes various instrumentalities, deployable as nodes in a MoCA compliant coaxial cable network … [,] deploys the instrumentalities to, *inter alia*, provide a whole-premises DVR network over an on-premises coaxial cable network," otherwise referred to as Legacy Time Warner Cable's whole-home DVR service,  and offers this service to its customers for a fee.  Am. Compl. ¶¶ 40–45, Apr. 19, 2023, '50 Dkt. 15; Am. Compl. ¶¶ 40–45, Apr. 19, 2023, '51 Dkt. 11..  Entropic claims this infringes on 12 patents, though only accused 7 patents in the '50 case: U.S. Patent Nos. 7,295,518 (the "'518 Patent"), 7,594,249 (the "'249 Patent") (together the "Network Patents"); U.S. Patent Nos. 7,889,759 (the "'759 Patent"), 8,085,802 (the "'802 Patent") (together the "Node Admission Patents"); U.S. Patent Nos. 8,631,450 (the "'450 Patent"), 8,621,539 (the "'539 Patent") (together the "Link Maintenance Patents"); and U.S. Patent No. 10,257,566 (the "'7,566 Patent" or the "Network Coordinator Patent").  *See* Am. Compl. ¶¶ 5, 79–316, '50.  Entropic accused the remaining 5 patents in the '51 case: U.S. Patent Nos. 9,838,213 (the "'213 Patent"), 10,432,422 (the "'422 Patent") (together the "PQoS Flows Patents"); U.S. Patent No. 8,320,566 (the "'0,566 Patent" or the "OFDMA Patent"); U.S. Patent No. 8,228,910 (the "'910 Patent" or the "Packet Aggregation Patent"); U.S. Patent No. 8,363,681 (the "'681 Patent" or the "Clock Sync Patent").  Am. Compl. ¶¶ 5, 79–247, '51.

Except for the individual infringement counts asserting different patents, the '50 and '51 Complaints are near-identical and rely on the same allegations.  *Compare* Am. Compl. ¶¶ 1–78, '50, *with* Am. Compl. ¶¶ 1–78, '51 (appearing to be a complete copy/paste).  And Entropic alleges that each of the 12 patents asserted in the '50 and '51 cases "are essential" to practicing MoCA standards.  *See* Am. Compl. ¶¶ 100 ('518 patent), 134 ('249 patent), 168 ('759 patent), 202 ('802 patent), 236 ('450 patent), 270 ('7,566 patent), 304 ('539 patent), '50; Am. Compl. ¶¶ 100 ('213

patent), 133 ('422 patent), 167 ('910 patent), 201 ('0,566 patent), 235 ('681 patent), '51.  Both Complaints also request the same relief.  *Compare* Am. Compl. 47, '50, *with* Am. Compl. 38, '51. The complaints are one lawsuit split in two—with no justification from Entropic.

### B.    The '52 Cable Case

The '52 Cable case is unrelated to the MoCA cases.  There, Entropic asserts a separate set of patents and accuses Charter's cable television and internet services rather than MoCA functionality.  U.S. Patent Nos. 11,381,866 (the "'866 Patent") and 11,399,206 (the "'206 Patent"). The '866 Patent and '206 Patent were each issued from a continuation of the application asserted in the '125 matter, issued as U.S. Patent 9,210,362 (the "'362 Patent").  Not only are the inventors of the '866, '206, and '362 patents the same, but the '52 Cable and '125 Cable cases include the same definitions for "Accused Products" and "Accused Services."  *See* Mot. to Consolidate 8 n.6, '125 Dkt. 99.

Charter filed a motion to consolidate the '52 and '125 Cable cases for similar reasons to this motion to consolidate the MoCA cases.  Charter references and incorporates in its entirety Charter's papers supporting its pending Motion to Consolidate in the '125 case.  *See* Mot. to Consolidate, '125 Dkt. 99; Reply, June 8, 2023, '125 Dkt. 116.  The briefing in the '125 case belies Entropic's identical gameplan: split the patents, proceed with one case, then hold back service on the other to follow up in due course.

### C.    The Related California Cases

Entropic has acknowledged through other lawsuits that the MoCA cases belong together in one suit, and the Cable cases belong together in another suit.  Entropic asserted the same MoCA patents in single actions against Charter's competitors filed in the Central District of California. *Entropic Commc'ns, LLC v. Comcast Corp.*, 2:23-cv-01048 (C.D. Cal.) (all 12 MoCA patents asserted against Comcast entities); *Entropic Commc'ns, LLC v. Cox Commc'ns, Inc.*, 2:23-cv-

01047 (C.D. Cal.) (all 12 MoCA patents asserted against Cox entities); *Entropic Commc'ns, LLC v. Dish Network Corp.*, 2:23-cv-01043 (C.D. Cal.) (all 12 MoCA patents asserted against DISH entities). It did the same with the Cable cases, asserting all patents in single suits. *Entropic Commc'ns, LLC v. Comcast Corp.*, 2:23-cv-01050 (C.D. Cal.) (all 3 cable patents asserted against Comcast entities); *Entropic Commc'ns, LLC v. Cox Commc'ns, Inc.*, 2:23-cv-01049 (C.D. Cal.) (all 3 cable patents asserted against Cox entities). The California Cases are set for a scheduling conference on July 21, 2023. *See, e.g.*, 2:23-cv-01050 (C.D. Cal.), Dkt. 73.

### D. Entropic's Actions Post Filing and Where the Cases Now Stand

Entropic filed the '50 and '51 MoCA cases on February 10, 2023. It served Charter in the '50 case on February 13. *See* Summons Returned Executed, February 14, 2023, '50 Dkt. 10. Entropic held back service in the '51 case. On April 14, this Court ordered a case management conference set for May 30 in the '50 case only. Order, '50 Dkt. 14. Entropic continued to litigate the '50 and '51 MoCA cases in unison. On April 19, Entropic amended both complaints. Charter also litigated these cases together, filing Federal Rule of Civil Procedure 12(b)(3) motions to dismiss for improper venue in both the '50 and '51 cases, despite having only received service in the '50 case. *See* Mot. to Dismiss, Apr. 21, 2023, '50 Dkt. 17; Mot. to Dismiss, Apr. 21, 2023, '51 Dkt. 13. Entropic responded to Charter's 12(b)(3) in both, and the parties fully briefed the motions now pending before this Court. Yet Entropic continued to stall service in the '51 case.

May 30 arrived, the day of the case management conference in the '50 case. At 9:55 A.M., Entropic finally served Charter the '51 Complaint, mere hours before the parties appeared before this Court that afternoon to move the '50 case forward. Summons Returned Executed, June 7, 2023, '51 Dkt. 32. Entropic did not even provide proof of service to this Court until a week later. *Id.* By then, this Court had long since set the '50 case's schedule. Then, on June 13, this Court consolidated the '51 case (MoCA) and the '52 case (Cable). On June 15, this Court set a

5

scheduling conference in the '51 and '52 cases for July 20—over a month out—cementing the fact that the '51 case will trail the '50 case to which it is related, and the '52 case will trail the '125 case to which it is related.

### E.    Charter's Attempts to Meet and Confer, and Entropic's Admissions

On June 15, 2023, Charter and Entropic met and conferred on the lack of basis for consolidating the '51 (MoCA) and '52 (Cable) cases, and the need to break these cases apart and consolidate the '50 (MoCA) and '51 (MoCA) case for pretrial purposes.  Declaration of Krishnan Padmanabhan ("Padmanabhan Decl."), ¶ 2.  Throughout, Entropic has admitted that it stalled the '51 (MoCA) and '52 (Cable) cases so they would lag behind the '50 (MoCA) and '125 (Cable) cases and not be consolidated.  Padmanabhan Decl., ¶ 3.  Entropic does not want to consolidate the cases because it fears that if it asserts too many patents in a single suit, the Eastern District of Texas's Local Rules will streamline Entropic's case and prevent it from mounting the sweeping offense against Charter that it hopes for.  *See* Pl.'s Resp. to Def.'s Mot. to Consolidate 13, May 31, 2023, '125 Dkt. 113 (arguing that it "chose to deliberately structure [the Cable] cases based on the Court's established procedures and schedules, including the fast pace of discovery, expert reports, pretrial and limited trial time" and that consolidation "would … force Entropic to proceed with less claims than it otherwise would have").  Instead, Entropic anticipates that separate cases will let it get double of everything at each pretrial stage (and potentially at trial).  Further, Entropic refused to join Charter in moving to deconsolidate the '51 (MoCA) and '52 (Cable) cases because it did not want to prejudice Entropic's position that the '50 (MoCA) and '51 (MoCA) cases should remain separate, and similarly did not want to prejudice Entropic's position that the '125 (Cable) and '52 (Cable) cases should also remain separate.  Padmanabhan Decl., ¶ 3.

**LEGAL STANDARD**

"District Courts have the power and discretion to consolidate actions if they involve a common question of law or fact."  *Hillman Grp., Inc. v. Keyme, LLC*, 2020 WL 6938441, at *2 (E.D. Tex. Oct. 23, 2020) (citing *Dupont v. S. Pac. Co.*, 366 F.2d 193, 195–96 (5th Cir. 1966)); *see also* Fed. R. Civ. P. 42(a)(2).  "Courts are urged to make good use of Rule 42(a) to expedite the trial and eliminate unnecessary repetition and confusion."  *Id.* (quoting *Dupont*, 366 F.2d at 195) (cleaned up); *see also Lester v. Exxon Mobil Corp.*, 879 F.3d 582, 592 (5th Cir. 2018) (repeating district court's observation that Rule 42(a) is "the proper solution to the problems created by the existence of two or more cases involving the same parties and issues, simultaneously pending in the same court.").  "[T]he decision to invoke the rule is entirely within the discretion of the district court as it seeks to promote the administration of justice."  *Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973).

"Courts should consider the following five factors in determining whether consolidation is appropriate: (1) whether the actions are pending in the same court; (2) whether there are common parties; (3) whether there are common questions of law or fact; (4) whether there is risk of prejudice or confusion versus a risk of inconsistent adjudications if the cases are tried separately; and (5) whether consolidation will promote judicial economy."  *Holmes v. City of San Antonio Airport*, No. 5:21-cv-00267-OLG, 2021 WL 2878548, at *1 (W.D. Tex. Apr. 26, 2021).

**ARGUMENT**

Charter respectfully requests this Court consolidate the '50 and '51 cases (MoCA cases) for all pretrial matters and issue an amended docket control order that governs both cases up until trial.[4]  There are common questions of law and fact supporting consolidation of the '50 and '51

---

[4] For the '51 case, Charter can proceed to provide Pat. L.R. 3-3 and 3-4 disclosures consistent with the schedule in the Patent Local Rules, and keyed off the date that Entropic provides its Pat.

cases, consolidation promotes judicial economy, and consolidation will not prejudice Entropic. Charter also respectfully requests that, before consolidating the '50 and '51 cases, this Court deconsolidate the '51 (MoCA) and '52 (Cable) cases.  There are no common questions of law and fact supporting consolidation of the '51 and '52 cases, consolidation does not promote judicial economy, and deconsolidation will not prejudice Entropic.

Entropic's shifting positions on consolidation reveal its primary motivation is to frustrate Charter's defense.  Entropic continues to maintain incompatible positions: that the MoCA cases and Cable cases cannot be consolidated respectively, but a MoCA case and a Cable case should remain consolidated.  This Court should reject Entropic's inconsistent positions and grant Charter the relief it requests.

## I.    Consolidation of the Related '50 and '51 MoCA Cases is Warranted.

### A.    Factor 1 and 2 heavily favor consolidation of the '50 and '51 cases.

The first two factors—(1) whether the actions are pending in the same court and (2) whether there are common parties—are not in dispute.  Both cases are pending before this Court, and the parties are identical.

### B.    Factor 3: There are common questions of law and fact supporting consolidation of the '50 and '51 cases.

There is much overlap between these two cases presenting many common questions of law and fact.  These common questions of law and fact support consolidation.

Entropic accuses Charter's use of the MoCA standard for each of the twelve patents across both cases.  In particular, Entropic accuses the same Charter service—Legacy Time Warner Cable's whole-home DVR service—of infringement in both cases.  Accordingly, the same technology issue

---

L.R. 3-1 and 3-2 disclosures.  The remainder of the schedule need not be impacted, and the '51 case can join otherwise join the schedule for the '50 case.

—alleged infringement of Legacy Time Warner Cable's whole-home DVR service through use of the MoCA standard—will be at the core of both cases. *See Lo v. Microsoft Corp.*, 2008 WL 11445459, at *2–3 (E.D. Tex. Mar. 25, 2008) ("[T]o see whether a likelihood of substantial overlapping issues is present, courts look at the patents or technologies-in controversy."); *Wi-Lan Inc. v. Alcatel-Lucent USA Inc.*, 2013 U.S. Dist. LEXIS 199118, at *17 (E.D. Tex. Mar. 18, 2013) (consolidating patent infringement cases when "[t]he accused products interoperate with each other," the cases will have "overlapping issues" and the products "are tightly interwoven in the way that they communicate").

The allegations against the MoCA standard also implicate the same underlying technologies that are implemented in the standard, including (i) OFDM specifically. '50 Case ('518, '759, and '450 patents); '51 Case ('0566 patent). It also implicates non-infringing technologies to the accused MoCA standard, such as WiFi. Entropic also alleges that all twelve asserted patents across the two cases are essential to the MoCA standard; this implicates the fair, reasonable, and non-discriminatory royalty rate obligations associated with that standard, which will need to be assessed in each case. *See* Am. Compl. ¶¶ 100, 134, 168, 202, 236, 270, 304, '50; Am. Compl. ¶¶ 100, 133, 167, 201, 235, '51.

There will be substantial discovery overlap. *Affinity Labs of Tex., LLC v. Blackberry Ltd.*, 2014 WL 12551206, at *4 (W.D. Tex. Apr. 4, 2014) (consolidating discovery in related patent cases in which defendants used similar patents in comparable technologies because of substantial overlap in pretrial proceedings); *see also Sage Prods., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993) ("The cases are consolidated for purposes of resolving pretrial matters because duplication of effort will be avoided as will the delay and expense of proceeding with separate depositions and separate motion schedules."). Charter will produce the same documents and the

9

same witnesses in both cases.  Both cases will involve the same third parties, including the MoCA Alliance, Broadcom, CommScope, Vantiva, and MaxLinear.  And to establish the history of the Plaintiff's predecessor entity, Entropic Communications, Inc. ("Legacy Entropic"), the same Entropic employees will have to testify in both cases, including Anton Monk, Itzhak Gurantz, and Ladd El Wardani.

At bottom, Entropic's infringement allegations are based on Charter's purported implementation of MoCA.  The evidence for alleged infringement of the 12 patents will be the same.  There is no reason to keep these 5 MoCA patents separate from the other 7 MoCA patents for pretrial matters.

### C.      Factor 4: Consolidation of the '50 and '51 cases would not prejudice Entropic.

The '50 case has barely begun.  At this point, the '51 case is only a few weeks behind the '50 case.

Entropic filed both suits on the same day, and Charter later responded to both suits on the same day with venue motions.  The docket tells the whole story: Entropic litigated the '51 case, hit the pause button, then quietly served Charter the morning of the case management conference in the '50 case.  Entropic will not suffer any prejudice if this Court exercises its discretion to consolidate the '50 and '51 cases for all pretrial matters.  *See Hillman Grp.*, 2020 WL 6938441, at *3 ("Although consolidation will delay resolution of the claims [in one case], this is offset by expediting resolution of the claims [in the other case]."); s*ee also Sage Prods.*, 148 F.R.D. 213 at 215 ("The enhanced efficiency of jointly handling the numerous, complex issues involved in these cases outweighs any possible inconvenience to the plaintiff that may result.").  The cases would be on the same schedule, where they have always belonged.

Additionally, having already voluntarily consolidated all of these patents on its own in single cases in California, Entropic cannot possibly claim prejudice.  The same 12 patents that Entropic asserted across the '50 and '51 matters are asserted by Entropic in a single complaint in the Central District of California.  In fact, Entropic filed in this manner—with all 12 patents in a single case—against three separate defendants.  2:23-cv-01048 (all 12 patents against Comcast); 2:23-cv-01047 (all 12 patents against Cox); 2:23-cv-01043 (all 12 patents against DISH).

Finally, while Entropic may argue that it should have the choice of whether to divide patents between different complaints and choose which lawsuit to lead with, Entropic's preferences are not relevant here.  Courts can *sua sponte* consolidate cases, regardless of the parties' objections (let alone their preferences).  *Lester v. Exxon Mobil Corp.*, 879 F.3d 582, 592 (5th Cir. 2018) ("A district court is permitted to order consolidation pursuant to [Rule 42(a)] *sua sponte*."); *see also Sage Prods.*, 148 F.R.D. at 215 ("The parties do not have to consent or agree to the consolidation.").  More importantly, Entropic should not be permitted to impose more cost and burden on the parties and the Court by timing service of a complaint.

### D. Factor 5: Consolidation of the '50 and '51 cases promotes judicial economy.

Consolidating the '50 and '51 cases for pretrial matters will be far more efficient than handling the cases separately.

Entropic's decision to file separate suits and dual track a single case on separate schedules mismatched by a matter of weeks will create substantial headaches for the parties and this Court. The parties will relitigate critical stages of the case, including document and written discovery, depositions, *Markman*, expert discovery and motions, summary judgment, and pretrial motions, within weeks of each other.  For example, Charter expects to put up the same witnesses in both '50 and '51 cases, because both cases are directed at Charter's use of MoCA.  By consolidating these matters, the parties will avoid deposing the same witnesses multiple times, and recycling the same

11

papers and arguments in a performative display asking for identical relief that this Court could have determined at one instance.

Further, the risks of issue and claim preclusion abound.  "Our precedent does not limit collateral estoppel to patent claims that are identical.  Rather, it is the identity of the issues that were litigated that determines whether collateral estoppel should apply."  *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).  Key rulings on issues in the '50 case, including rulings regarding the scope and terms of the FRAND commitment in the MoCA standard, claim construction issues, and motions on expert reports (e.g., the admissibility of expert theories), could bind the '51 case.  *See, e.g.*, *BlitzSafe Tex., LLC v. Honda Motor Co.*, 2016 WL 4762083, at *5–7 (E.D. Tex. Sept. 13, 2016) (completing an entire collateral estoppel analysis to decide whether the court could even consider the plaintiff's claim construction arguments).

The only explanation for Entropic's decision to divide the patents in this manner, and hold back service of the '51 complaint, is that Entropic sought to manipulate the schedule for Entropic's benefit, at the Court's and Charter's expense.  In the process, Entropic sacrifices efficiency with the hope that two cases will double its opportunities for written discovery, double the number of eligible claim construction terms, and double the number of depositions (including potentially multiple depositions of the same witness).  But Entropic does not need two cases, especially where it has conceded that one case would suffice (as it has in C.D. Cal.), to receive process under the federal, local, and patent rules.  This Court has the discretion to amend the scope of discovery and claim construction, and the docket control order.  *See Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015) ("Local patent rules are essentially a series of case management orders that fall within a district court's broad power to control its docket and enforce its order.").

This Court can grant Charter's motion, instantly achieve numerous benefits to judicial economy, and retain flexibility to make modifications if necessary.  All five factors support consolidating the '50 and '51 cases for all pretrial matters.

## II.   Deconsolidation of the '51 and '52 Cases is Warranted.

### A.   The same factors do not support consolidation of the '51 and '52 cases.

Conversely, factors three, four, and five weigh heavily against consolidation of the '51 and '52 cases.  While the first two factors are not in dispute (both pending in this Court, and same parties), the remaining three provide no basis for consolidating one MoCA case ('51 case) with one Cable case ('52 case), and Charter respectfully requests that this Court reconsider its decision and deconsolidate the '51 (MoCA) and '52 (Cable) cases.

First, there are no readily identifiable common questions of law or fact, and discovery will not overlap in any meaningful way.  The MoCA and Cable cases do not concern the same technology.  Charter does not expect that the MoCA cases' witnesses will also be witnesses in the Cable cases.  The MoCA cases include the same third parties, such as the MoCA Alliance and the founders of Entropic's legacy entity.  The Cable cases have different witnesses regarding technologies originating from MaxLinear's legacy entity, which focused on cable technology, as well as members of the CableLabs consortium.  These are entirely different lawsuits, addressing different subject matter, that happen to be between the same parties.

Second, Entropic would not be prejudiced by deconsolidation of the '51 and '52 cases. This court consolidated the two cases just days ago, and there has been no movement since. Deconsolidation would be a simple docket entry that returns the two MoCA and two Cable cases

to the status quo. In fact, Entropic is addressing the patents in the MoCA cases and Cable cases in separate litigations in the Central District of California.[5]

Third, judicial economy will not be served, as this Court will preside over separate MoCA and Cable cases shoehorned into the same proceedings, right after litigating near-identical MoCA and Cable cases separately.  Key stages of the litigation will remain disjointed, such as *Markman*— where there will be no coherent technological theme as the parties address two completely different types of technology in the same briefing and hearing.  Furthermore, this Court and the parties will have to consider the impact any resolution of the '50 (MoCA) case and the '125 (Cable) case have on these already convoluted subsequent proceedings.  Consolidation just compounds the existing confusion from separate MoCA and Cable cases.  Just after the '50 case's MoCA *Markman* hearing, this Court and the parties will redo MoCA *and* Cable in a second *Markman* hearing weeks later.  Nobody should want this.

    **B.**    **Entropic's position on deconsolidation is without merit.**

On June 15, 2023, the parties met and conferred on the consolidation issues.  Entropic maintains, with no legal justification, that the '51 (MoCA) and '52 (Cable) cases should remain consolidated, while holding firm in its opposition to Charter's MoCA and Cable consolidation motions.  In fact, during the meet and confer, Entropic admitted that the '51 (MoCA) and '52 (Cable) cases did not have common subject matter, but was unwilling to join Charter's request

---

[5] *Entropic Commc'ns, LLC v. Comcast Corp.*, 2:23-cv-01048 (C.D. Cal.) (all 12 MoCA patents asserted against Comcast entities, same as 23-cv-00050 and 23-cv-00051); *Entropic Commc'ns, LLC v. Comcast Corp.*, 2:23-cv-01050 (C.D. Cal.) (all 8 cable patents asserted against Comcast entities, same as 22-cv-00125 and 23-cv-0052); *Entropic Commc'ns, LLC v. Cox Commc'ns, Inc.*, 2:23-cv-01047 (C.D. Cal.) (all 12 MoCA patents asserted against Cox entities, same as 23-cv-00050 and 23-cv-00051); *Entropic Commc'ns, LLC v. Cox Commc'ns, Inc.*, 2:23-cv-01049 (C.D. Cal.) (all 8 cable patents asserted against Cox entities, same as 22-cv-00125 and 23-cv-0052).

because it feared this would prejudice the pending motion for consolidation of the 22-cv-00125 and 23-cv-00052 cases.

Ultimately, all Charter asks is that the MoCA cases be consolidated for pretrial matters. Separately, Charter asks that its previously filed motion regarding the Cable cases be granted.

## CONCLUSION

For the foregoing reasons, Defendant Charter Communications Inc. respectfully requests that this Court grant this Motion and issue an order under Rule 42 consolidating 2:23-cv-00050-JRG (MoCA), with 2:23-cv-00051-JRG (MoCA) for all pretrial matters, with the '50 case serving as the lead action.  Defendant Charter Communications Inc. also requests that, before consolidating the MoCA cases, this Court deconsolidate 2:23-cv-00051-JRG (MoCA), with 2:23-cv-00052-JRG (Cable).

Date: June 26, 2023                                  Respectfully submitted,

                                                     /s/ *K. Padmanabhan*
                                                     K. Padmanabhan (*pro hac vice*)
                                                     kpadmanabhan@winston.com
                                                     WINSTON & STRAWN LLP
                                                     200 Park Ave.
                                                     New York City, NY 10166
                                                     Telephone: (212) 294-6700
                                                     Facsimile: (212) 294-4700

                                                     Saranya Raghavan (*pro hac vice*)
                                                     sraghavan@winston.com
                                                     WINSTON & STRAWN LLP
                                                     35 W. Wacker Dr.
                                                     Chicago, IL 60601
                                                     Telephone: (312) 558-5600
                                                     Facsimile: (312) 558-5700

                                                     Deron R. Dacus
                                                     ddacus@dacusfirm.com
                                                     THE DACUS FIRM, PC
                                                     821 Ese Loop 323 Suite 430
                                                     Tyler, TX 75701
                                                     Telephone: (903) 701-1117
                                                     Facsimile: (903) 581-2543

                                                     **ATTORNEYS FOR**
                                                     **CHARTER COMMUNICATIONS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on June 26, 2023.

/s/ *K. Padmanabhan*
K. Padmanabhan (*pro hac vice*)

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h).  Counsel for Plaintiff Entropic Communications, LLC stated that it opposes both consolidation of the '50 and '51 cases, and deconsolidation of the '51 and '52 cases.

/s/ *K. Padmanabhan*
K. Padmanabhan (*pro hac vice*)