UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>  Defendant. | Case No. 2:23-cv-00051-JRG (Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>  Defendant. | Case No. 2:23-cv-00052-JRG (Member Case)<br><br>**JURY TRIAL DEMANDED** |

**JOINT MOTION FOR ENTRY OF DISCOVERY ORDER**

Plaintiff Entropic Communications, LLC ("Entropic") and Defendant Charter Communications, Inc. ("Charter"), hereafter referred to as "the Parties," file this Joint Motion for Entry of Discovery Order.

At the time of filing, the parties have exchanged and meaningfully conferred on their positions on the Discovery Order but three disputes remain. First, the parties disagree as to the number of interrogatories that should be permitted by the parties. Second, the parties disagree as to the limit of the number of hours for party and non-party depositions. Third, the parties disagree as to the manner in which expert deposition hours should be assessed.

I.    **NUMBER OF INTERROGATORIES**

  A.    **Entropic's Position**

Entropic proposes that each party may serve 45 interrogatories in this consolidated action. This is 15 more than the number of interrogatories that the parties agreed to in Case No. 2:23-cv-00050-JRG (the "050 Case") (*see* 050 Case Dkt. No. 48) and 5 more than the number of interrogatories that the parties agreed to in Case No. 2:22-cv-125 (the "125 Case") (*see* 125 Case Dkt. No. 34).

Despite arguing to this Court that these cases are so vastly different that they should be deconsolidated, Charter has refused to agree to a modest increase in the number of interrogatories for no reason other than the discovery limits "exceed the previously agreed Discovery Orders in the [125] and [050] matters." *See* Ex. A at 13. However, while Charter originally proposed that parties have 40 interrogatories each (the same limit that was agreed to in the 125 Case), Charter's latest position is that parties should only be entitled to 30 interrogatories each, which is *less* than what was agreed to in the single, unconsolidated 125 Case. *See* Ex. A. at 3. Charter offers no reasonable explanation for its proposal to reduce the discovery limits even further in this action, which unlike the 125 and 050 Cases, involves two entirely different technological frameworks and damages issues.

While these consolidated cases involve the same parties, the factual similarities between the two cases stop there. They involve, as Charter has represented to this court, "two completely different types of technology." Dkt. 35 at 14. Different technology means different damages theories. Indeed, Charter argued to this court that "there are no readily identifiable common questions of law or fact, and *discovery will not overlap in any meaningful way*." Dkt. 35 at 13.

In an attempt to reach an agreement on this issue, Entropic proposed cross-use of discovery between the present case and the 125 and 050 Cases in order to reduce the number of interrogatories needed here. Entropic first proposed this alternative to Charter on August 2, 2023.

-2-

*See* Ex. A. at 11-12. On the evening of August 9, 2023, Charter informed Entropic that it objected to cross-use of discovery between cases.[1] *Id.*

Charter's argument regarding discovery in the Central District of California cases is inaccurate. The parties made competing proposals regarding certain discovery limitations. The Court did not adopt either side's proposal. In three of the MoCA cases and two of the implementation cases, Entropic proposed that it be permitted to serve 15 interrogatories on each defendant, plus 10 common interrogatories on all of the defendants. Thus, at a minimum, under Entropic's proposal, it would have been permitted to serve 50 interrogatories on any party who was a defendant in both the MoCA and implementation cases. Given the need for discovery between the two cases on different types of technology and different damages theories combined with Charter's opposition to a cross-use agreement, Entropic's proposal of 45 interrogatories per party (only 5 more than were allowed in the single, unconsolidated 125 Case) is appropriate.

**B.   Charter's Position**

Charter proposes that the parties serve 30 interrogatories – the same number as in the earlier Entropic-Charter matter with Case No. 2:23-cv-00050-JRG (the "050 Case") (*see* 050 Case Dkt. No. 48), and 10 less than in the earlier Entropic-Charter matter with Case No. 2:22-cv-125 (the "125 Case") (*see* 125 Case, Dkt. No. 34). As Entropic admits, common technology – the MoCA standard – is at issue in the 050 Case and the 051 Case. Similarly, Entropic admits that common technology is at issue in the 125 Case and 052 Case, because the two patents in the 052 case are in the same family as a patent in the 125 Case.[2] In addition, the consolidated 051 and 052

---

[1] This position is perplexing, given Charter's stated justification that "fewer deposition hours will be necessary in this consolidated matter" due to its similarities to the 125 and 050 Cases.

[2] U.S. Patent Nos. 11,381,866 (the "'866 Patent") and 11,399,206 (the "'206 Patent") asserted in the 052 case are continuations from a common parent application U.S. Patent 9,210,362 (the "'362 Patent"), which is asserted in the 125 Case.

cases have a total of seven patents; the 050 case, in which Entropic agreed to thirty interrogatories, also has seven patents.

While Entropic argues that the distinct subject matter in the 23-cv-51 and 23-cv-52 matters requires additional interrogatories, Entropic's agreement on the number of interrogatories in parallel litigation belie Entropic's claims here. In the Central District of California, Entropic agreed to twenty-five interrogatories across all of the patents in the 23-cv-00050 (MoCA-1) and 23-cv-00051 (MoCA-2) cases. *See* C.A. 23-cv-01048-JWH-KES (C.D. Cal.), Dkt. 106 at 18-19 (agreeing to twenty-five interrogatories total across all 12 patents in the MoCA-1 and MoCA-2 cases). Similarly, in the Central District of California, Entropic has *twice* agreed to twenty-five interrogatories in two separate case that each assert all of the patents that are asserted in the 22-cv-00125 (Cable-1) and 23-cv-00052 (Cable-2) cases combined. *See Entropic Communications, LLC v. Comcast Corp., Inc. et al*, C.A. 23-cv-01050-JWH-KES (C.D. Cal.), Dkt. 96 at 13; *see also Entropic Communications, LLC v. Cox Communications, Inc., et al*, C.A. 23-cv-01049-JWH-KES (C.D. Cal.), Dkt. 63 at 13. In short, Entropic seeks a total of 105 interrogatories in the Eastern District of Texas across the 22-cv-00125, 23-cv-00050, and consolidated 23-cv-00051 and 23-cv-00052 cases; Entropic sought only 50 interrogatories – *less than half the number it seeks in the Eastern District of Texas cases* – for cases involving the exact same set of patents in the Central District of California.

Having conducted discovery in the 125 Case and 050 Case on the same subject matter as the consolidated 051 and 052 Cases, the parties will certainly be able to obtain ample discovery with thirty interrogatories.

II.     **NUMBER OF HOURS FOR PARTY AND THIRD-PARTY DEPOSITIONS**

     A.     **Entropic's Position**

Entropic proposes increasing both the party and non-party deposition limits from 60 hour to 80 hours. This is based on Entropic's experience in the 125 Case where Charter identified over twelve 30(b)(6) witnesses.

Again, Charter offers no reasonable justification for its refusal to increase the discovery limits other than that the proposed limits differ from the limit set in the 125 Case and the 050 Case. But Charter has represented to this Court that it does not expect that the witnesses in the 051 Case will also be witnesses in the 052 Case. *See* Dkt. 35 at 13. Moreover, Charter's latest position is that each party should be permitted only 50 hours of party deposition testimony and 50 hours of non-party testimony, which is again *less* than the 60 hours permitted in each of the 125 and 050 Cases. *See* Ex. A at 3. And as stated with regard to interrogatories, Charter also opposes a cross-use agreement for the use of deposition testimony from the 125 and 050 Cases here. This all suggests that Charter's position is inconsistent with its representation to this Court that there will be no overlap in witnesses between the two cases at issue here. If Charter's representation is true, then Entropic cannot possibly depose all of Charter's witnesses in only 50 hours, especially given its experience in the 125 Case.

**B.     Charter's Position**

Entropic cannot reasonably dispute the overlap between the consolidated 51 and 52 Cases, and the earlier 125 and 50 Cases. The number of issues that the parties will need to investigate through deposition testimony will be far reduced based on their discovery efforts in the earlier cases. Specifically, fewer deposition hours will be necessary in this consolidated matter because Entropic has already taken the deposition of Charter witnesses in the earlier 125 case, which involves a patent in the same family as two of the patents asserted here, and will take the testimony of Charter witnesses in the earlier 50 Case, which involves the same technology (MoCA) as the remaining five patents asserted here.

### III. NUMBERS OF HOURS FOR EXPERT DEPOSITIONS

#### A. Entropic's Position

Entropic proposes an expert deposition limit of 7 hours per substantive issue, subject to additional hours upon agreement by the parties or for good cause. This limit will prevent parties from being rewarded with an additional 7 hours to depose an expert on a supplemental report that is either untimely or contains material that should have been included in the expert's initial report.

#### B. Charter's Position

Consistent with the 125 Case and 50 Case, Charter proposes an expert deposition limit of 7 hours per report. While Entropic discusses the issue of "supplemental reports," assuming that the expert's deposition had not already been taken on the original report, and that the supplemental report is served sufficiently in advance of the expert deposition to allow the deposing party a full and fair opportunity to investigate all of the expert's opinions, a supplemental report would not warrant a supplemental deposition.

By contrast, during the meet and confer process, the parties could not easily determine what constituted discrete "substantive issues" as recited in Entropic's proposal. Accordingly, Entropic's proposal only creates ambiguity where none exists otherwise. A limit of seven hours per report provides the parties clear guidance, and is consistent with the parties' agreement in the 125 and 50 Cases.

Dated: August 10, 2023

Respectfully submitted,

*/s/ James A. Shimota*
James Shimota (*pro hac vice*)
George C. Summerfield
Melissa M. Haulcomb (*pro hac vice*)
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel.: (312) 372-1121
Fax: (312) 827-8000
jim.shimota@klgates.com
george.summerfield@klgates.com
melissa.haulcomb@kglates.com

Christina Goodrich (SBN 261722)
christina.goodrich@klgates.com
Cassidy T. Young (SBN 342891)
Cassidy.young@klgates.com
**K&L GATES LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Darlene F. Ghavimi
Texas Bar No. 24072114
**K&L GATES LLP**
2801 Via Fortuna, Suite #650
Austin, TX 78746
Telephone: (512) 482-6919
Facsimile: (512) 482-6800
darlene.ghavimi@klgates.com

Peter E. Soskin (*pro hac vice*)
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220
peter.soskin@klgates.com

Wesley Hill
Texas Bar No. 24032294
Andrea Fair
Texas Bar No. 24078488
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy

<div style="margin-left:auto">

Longview, TX 75604
Tel: (903) 757-6400
wh@wsfirm.com
andrea@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

</div>

Dated: August 10, 2023                             Respectfully submitted,

*/s/ Krishnan Padmanabhan (with permission)*
K. Padmanabhan (*pro hac vice*)
kpadmanabhan@winston.com
**WINSTON & STRAWN LLP**
200 Park Ave.
New York City, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Saranya Raghavan (*pro hac vice*)
sraghavan@winston.com
**WINSTON & STRAWN LLP**
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

William M. Logan
wlogan@winston.com
State Bar No. 24106214
**WINSTON & STRAWN LLP**
800 Capitol St., Suite 2400
Houston, TX 77002-5242
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Deron R. Dacus
State Bar No. 00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel.: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

**ATTORNEYS FOR
CHARTER COMMUNICATIONS, INC. IN
CASE NO. 2:23-CV-00051-JRG**

Dated: August 10, 2023 Respectfully submitted,

*/s/ Daniel Reisner (with permission)*
Daniel L. Reisner
David Benyacar
Elizabeth Long
Melissa Brown
Albert J. Boardman
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, New York, 10019-9710
Tel.: (212) 836-8000
Fax: (212) 836-8689
daniel.reisner@arnoldporter.com
david.benyacar@arnoldporter.com
elizabeth.long@arnoldporter.com
melissa.brown@arnoldporter.com
albert.boardman@arnoldporter.com

Amy L. DeWitt
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Tel.: (202) 942-5000
Fax: (202) 942-5999
amy.dewitt@arnoldporter.com

Deron R. Dacus
State Bar No. 00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel.: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

**ATTORNEYS FOR CHARTER COMMUNICATIONS, INC. IN CASE NO. 2:23-CV-00052-JRG**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been served on all counsel of record via the Court's CM/ECF system on August 10, 2023.

/s/ *James A. Shimota*
James Shimota